**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

                  )
**PROJECT ON GOVERNMENT**  )
**OVERSIGHT, INC.**  )
**1100 G St., NW**  )
**Suite 500**  )
**Washington, D.C. 20005,**  )
  )
      **Plaintiff,**  )
  )
**v.**  )     **Case No: 1:20-cv-3165**
  )
**DEPARTMENT OF DEFENSE**  )
**Defense Freedom of Information Division** )
**1155 Defense Pentagon**  )
**Washington, D.C. 20301-1155,**  )
  )
      **Defendant.**  )
_____)

## COMPLAINT

This complaint for injunctive and other appropriate relief seeks the immediate release of records requested by the plaintiff Project On Government Oversight ("POGO") and from defendant, Department of Defense ("DoD"), pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

## I.      INTRODUCTION

1. POGO asserts violations of FOIA by DOD for failing to respond to POGO's requests.

2. POGO asserts violations of FOIA by DOD for failing to produce responsive documents to POGO's requests.

3. POGO filed 2 requests with DOD regarding troop deployment numbers on April 21, 2020.

4. DOD acknowledged receipt of POGO's requests on April 22, 2020.

5. FOIA guidelines required DOD to respond within 20 business days, excluding Saturdays, Sundays, and legal holidays. To date, DOD has not produced any responsive documents.

6. POGO seeks a declaration that DOD violated FOIA by failing to disclose responsive records by the statutory deadline and an injunction ordering DOD to produce all non-exempt, responsive records by a date certain, without further delay.

## II.      JURISDICTION AND VENUE

7. This Court has both subject matter jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

8. Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

## III.      PARTIES

9. Plaintiff POGO is a nonpartisan independent organization based in Washington, DC organized under section 501(c)(3) of the Internal Revenue Code. Founded in 1981, POGO champions reforms to achieve a more effective, ethical, and accountable federal government that safeguards constitutional principles. POGO's investigators and journalists take leads and information from insiders and verify the information through investigations using FOIA, interviews, and other fact-finding strategies. POGO's investigative work has been recognized by Members of Congress, executive branch officials, and professional journalism organizations. For instance, in 2015, POGO won the Robert D.G. Lewis Watchdog Award, the Society of Professional Journalists Washington, D.C. Professional Chapter's highest journalistic award, for reporting on the Department of Justice's opaque system for handling allegations of attorney misconduct within its ranks. In 2018, POGO won an award from the Society for Advancing

Business Editing & Writing for its investigative series scrutinizing the government's oversight of offshore drilling. POGO extensively used records obtained under FOIA for this investigation.

10. DoD is a federal agency within the meaning of FOIA, 5 U.S.C. § 552(f). DOD has possession or control of the records POGO seeks in this action.

## IV.   FREEDOM OF INFORMATION ACT

11. FOIA requires federal agencies, upon request, to make records "promptly available" to the public. Id. § 552(a)(3)(A).

12. The agency must provide the public records when they are requested by the public, in order "to ensure an informed citizenry, vital to the functioning democratic society." *See LRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 242 (1978).

13. An agency must determine whether to comply with a FOIA request within twenty business days and "shall immediately notify the person making such request of such determination and the reasons therefor." *Id*. § 552(a)(6)(A)(i); see also 15 C.F.R. § 4.6(b).

14. The twenty-day deadline for an agency to determine whether to comply with a request begins on the date "the request is first received by the appropriate component of the agency" but no later than "ten days after the request is "first received by any component of the agency that is designated in the agency's regulations . . . to receive [FOIA] requests." 5 U.S.C. § 552(a)(6)(A)(i)-(a)(6)(A)(ii).

15.  In unusual circumstances, the time limits prescribed may be extended by written notice to the person making such request setting forth the reasons for such extension and the date on which a determination is expected to be dispatched. No such notice shall specify a date that would result in an extension for more than ten working days. 5 U.S.C. § 552(a)(6)(B).

16. If an agency does not respond to a FOIA request by the statutory deadline, the requester is deemed to have exhausted administrative remedies and may immediately pursue judicial review. Id. §§ 552(a)(6)(C)(i), 552(a)(4)(B).

## V.     BACKGROUND AND PUBLIC INTEREST IN THE RECORDS SOUGHT

### i.     U.S. Department of Defense

17. DoD is the nation's oldest and largest government agency. *See* *https://archive.defense.gov/about/* excerpt, p. 1, attached hereto as Exhibit A.

18. "The decision to unify the military different services under one Department led to the creation of the National Military Establishment in 1947. This establishment would replace the War Department, which converted to the Department of the Army. That same year, the U.S. Air Force was established followed by the founding of the Department of the Air Force." *Id.*

19. "Finally, the three military branches, Army, Navy, and Air Force, were placed under the direct control of the new Secretary of Defense, confirmed by Senate." *Id.*

20. "In 1949, an amendment to the National Security Act further consolidated the national defense structure by withdrawing cabinet-level status from the three Service secretaries. The National Military Establishment was then renamed the Department of Defense." *Id.*, pp. 1-2.

21. DoD is not only in charge of the military, but it also employs a civilian force of thousands, including over 1.4 million men and women on active duty, and 718,000 civilian personnel, making DoD the nation's largest employer. *Id.*, p. 1.

22. "Another 1.1 million serve in the National Guard and Reserve forces." *Id.*

23. Public Law 115-232, Section 595, states that "Secretary of Defense shall make publicly available, on a quarterly basis, on a website of the Department the top-line numbers of members of the Armed Forces deployed for each country as of the date of the submittal of the

report and the total number of members of the Armed Forces so deployed during the quarter

covered by the report."

24. A waiver of Public Law 115-232, Section 595, is permitted for "sensitive military

operation," however 10 U.S.C. § 130f states that "the term 'sensitive military operation' does not

include any operation conducted within Afghanistan, Syria, or Iraq."

### ii.      Defense Manpower Data Center

25. Defense Manpower Data Center ("DMDC") serves under the Office of the Secretary

of Defense (OUSD) to collate personnel, manpower, training, financial, and other data for DoD.

*See* https://www.dmdc.osd.mil/appj/dwp/dmdc_overview.jsp excerpt attached hereto as Exhibit

B.

26. DMDC is responsible for:

- The collection and maintenance an archive of automated manpower, personnel, training, and other databases for the Department of Defense;
- Supporting the information requirements of the OUSD for Personnel & Readiness (P&R) and other members of the DoD manpower, personnel, and training communities with accurate, timely, and consistent data; and
- Operating DoD-wide personnel programs and conduct research and analysis as directed by the OUSD P&R.

*Id.*

27. DMDC maintains a DoD Personnel, Workforce Reports & Publications site, which

publishes DoD Personnel and U.S. Military casualty statistics, as well as, historical DoD

procurement reports and data files. *See DoD Personnel, Workforce Reports & Publications*,

DEF. MANPOWER DATA CENTER, https://www.dmdc.osd.mil/appj/dwp/dwp_reports.jsp.

(last accessed October 17, 2020).

28. Decades of historical reports are available on the DMDC website, with the earliest

report from 1950. *Id.*

29. Moreover, military, and civilian personnel deployment numbers are published for the public and updated quarterly. This data is currently available for 2008 through June 2020. *Id.*

30. Before DMDC began reporting this data, other DoD entities published these troop numbers for a number of years. *See* https://www.dmdc.osd.mil/appj/dwp/dwp_reports.jsp (DMDC website) excerpt, attached hereto as Exhibit C.

31. The Department of Defense previously released data on U.S. troop levels by country as part of the report *Worldwide Manpower Distribution By Geographical Area* and later through the DMDC website. *See* DoD Personnel, Workforce Reports & Publications, DEF. MANPOWER DATA CENTER, https://www.dmdc.osd.mil/appj/dwp/dwp_reports.jsp. (last accessed October 17, 2020).

### iii.    Insufficiency of Publicly Disclosed Data

32. The Department of Defense has long recognized the importance of making troop numbers available to the public.

33. DoD generally has released quarterly DMDC reports on the number of personnel located in countries with ongoing military operations, including Afghanistan, Iraq, and Syria, since the commencement of such operations. *See* April 9, 2018 Military Times article, p. 2, attached hereto as Exhibit D.

34. At times, DoD also has released troop counts for Afghanistan, Iraq, and Syria under Force Management Level. *See* November 27, 2017 Military Times article, p.2, attached hereto as Exhibit E.

35. "Force management levels [("FML")], sometimes also described as troop caps, troop ceilings, or force manning levels, have historically been used by the United States to establish

bounds on the number of military personnel that may be deployed in a country or region." *See* CRS Report, p. 2, attached here to as Exhibit F.

36. "In August 2017, the DOD announced that it was revising its force management level accounting and reporting practices for Afghanistan to also include U.S. Armed Forces personnel in-country for short-duration missions, personnel in a temporary duty status, personnel assigned to combat support agencies, and forces assigned to the material recovery element and the Resolute Support sustainment brigade in reported totals." *Id.* p. 3.

37. In late 2017, DoD stopped reporting the number of U.S. military personnel deployed in support of operations in Afghanistan, Iraq, and Syria as part of its quarterly manpower reports and in other official releases. *Id.*

38. These data remain withheld, leading to criticism from some observers and Members of Congress.[1] *Id.*

39. The data, which was previously disclosed, was then removed. "[T]he Pentagon decided the public shouldn't be allowed to know the number of troops deployed in active warzones around the world, broken down by country." *See* December 5, 2019 POGO article, p. 10, attached here to as Exhibit G.

40. This can be seen when reviewing certain of the published DMDC reports before and after the DoD changed course of its disclosure policies.

---

[1]     Congressman Jason Crow (CO-6) has included a provision in the FY 2021 NDAA, which would "demand[] transparency by restricting 25% of travel funds for the Office of the Secretary of Defense until DOD complies with established law requiring them to make troop deployment numbers available to the general public and Congress." *See* July 2, 2020 Press Release, p. 3, attached hereto as Exhibit J; *see also* FY 2021 NDAA excerpt, p.1 attached hereto as Exhibit K.

41. While the figures for active duty troop numbers in Iraq, Syria and Afghanistan in the September 2017 report were available prior to the DoD's change of course, they were removed some time after DoD's decision. *Id.* pp. 9-10.

42. A note at the bottom of the spreadsheet read: "with ongoing operations, any questions concerning DoD personnel strength numbers are deferred to OSD Public Affairs/Joint Chiefs of Staff." *Id.*, p. 10.

43. Sometime on or before April 10, 2018, the data was reentered on this report. *See* Tara Copp, April 10, 2018 tweet, https://twitter.com/TaraCopp/status/983754982326521856, attached hereto as Exhibit H; *see also* November 2017 DMDC Report, attached hereto as Exhibit I.

44. Yet, starting in the December 2017 DMDC quarterly report, DoD abruptly redacted the numbers of U.S. military and civilian personnel serving in Afghanistan, Iraq, and Syria. *See* December 2017 Number of Military and DoD Appropriated Fund (APF) Civilian Personnel Permanently Assigned Report, attached hereto as Exhibit L.

45. Throughout the Bush and Obama Administrations and until November 2017, the DMDC records were an important public source of information about the U.S. military presence in key combat zones for Congress and the American people. *See* May 10, 2018 Committee of Oversight and Government Reform letter to Secretary James Mattis, p.1, attached hereto as Exhibit M.

46. DoD is in violation of precedent and the law. *Id*; *see also* Public Law 115-232, Section 595.

### iv.   Government Accountability

47. The DMDC data which could be previously relied on for public disclosure of the government's actions, is now incomplete.

48. The data facilitated democratic accountability for President Trump's pledge to withdraw troops from the Middle East and South Asia in that the public could keep track of troop numbers in those areas.

49. Despite stating that troop numbers would be reduced, the Administration has not been willing to discuss specific numbers. *See* November 10, 2019 NBC News article, p. 2, attached hereto as Exhibit N.

50. It is not just the DMDC data that is unreliable, there are other sources of information concerning the number of military personnel located abroad are irregular, inadequate, and incomplete. *Id.* pp. 3-4.

51. "Trump has repeatedly said he would be bringing troops home. Ultimately, the lack of information on U.S. personnel levels for high-profile operations puts into question how the U.S. public will ever be able to verify those claims." *Id.* p. 4.

52. In 2017, DoD revised both its FML and DMDC accounting practices. Despite Former Secretary of Defense James Mattis' intention to enhance transparency, the changing definitions in combination with the ultimate redaction of the DMDC figures have caused public confusion about the accuracy of any figures that DoD does report. *Id.* p. 2.

53. The public needs to have a complete source of information on troop numbers and how FML and DMDC troop counts are determined in order to evaluate the figures that the DoD discloses and statements made by the current administration. Without this context, troop level figures are less meaningful and informative than they otherwise would be.

### v.    Public Interest

54. POGO is requesting records which will inform readers about counting and publishing the number of military personnel in Afghanistan, Iraq, and Syria.

55. Disclosure of the requested records would inform the American public of some of the most fundamental aspects of the decision to send U.S. soldiers into harm's way—an understanding that is essential to continuing public oversight of its democratically elected government and its national security and foreign policy.

56. The requested records would "shed light on the operations or activities of the government." 32 CFR § 286.12(l)(2)(i).

57. The requested records concern the Department of Defense, a cabinet-level agency of the federal government. DoD "operations" or "activities" include the stationing and deployment of U.S. military and civilian personnel abroad, including in areas with ongoing operations such as Afghanistan, Iraq, and Syria.

58.  For decades, DoD has released data on the number of active military and civilian personnel stationed overseas.

59. These FOIA requests seek records pertaining to the criteria DoD uses to determine and calculate the number of military personnel by geographic location recorded in DMDC reports and under FML, which would be informative about the DoD's manpower accounting practices.

60. The subject of these requests therefore have a "direct and clear" connection with "identifiable operations or activities of the Federal Government." 32 CFR § 286.12(l)(2)(i).

61. The decision to redact DMDC figures has denied the American public information that is essential to democratic accountability of government policy in these areas.

62. The public needs to know the government's reasons for redaction in order to evaluate the adequacy of those reasons and to maintain trust in the operations of the government.

63. Understanding DoD's reasons for removing the public's access to an official, consistent source of information is critical to public oversight.

64. Disclosure of the requested records would be "meaningfully informative about government operations or activities." 32 CFR § 286.12(l)(2)(ii)(A).

65. The records provided official and regular information about U.S. personnel counts in Afghanistan, Iraq, and Syria.

66. Records concerning the decision to stop publishing DMDC figures for Afghanistan, Iraq, and Syria would help the public understand why this longstanding and essential disclosure has been halted.

## VI.    PLAINTIFF'S FREEDOM OF INFORMATION ACT REQUEST

### i.    Request A

67. On April 21, 2020, POGO employee Jason Paladino submitted a FOIA request to DoD via the OSD/JS Public Access Link FOIA Request Form which requested "records about counting and publishing the number of military personnel in Afghanistan, Iraq, and Syria:

1. Records sufficient to show the criteria for counting or determining the number of personnel under the Force Management Level (FML) for Afghanistan, Iraq, and Syria.
2. Records sufficient to show whether FML continues to function as a troop cap in Afghanistan, Iraq, and Syria.
3. Records sufficient to show the criteria for counting or determining the number of military personnel by country reported in the DMDC quarterly manpower report, "Number of Military and DoD Appropriated Fund (APF) Civilian Personnel Permanently Assigned By Duty Location and Service/Component" (DRS #103763).

*See* April 21, 2020 FOIA request ("Request A"), attached hereto as Exhibit O.

68. POGO requested a fee waiver pursuant to 5 U.S.C. § 522(a)(4)(A)(iii) and 32 CFR § 286.12(l) if the fees amount to more than $100. *Id.*, p. 2.

69. POGO also requested expedited processing pursuant to 32 C.F.R. § 286.8 (e)(1)(i)(B). *Id.*, p. 5.

70. POGO received an acknowledgment letter/interim response dated April 22, 2020 for Request 1 and it was assigned the tracking number 20-F-0994. *See* Interim response email attached hereto as Exhibit P; *see also* Request A Acknowledgment Letter, attached hereto as Exhibit Q.

71. In the letter, DoD denied POGO's request for expedited processing and informed POGO that it would not respond to Request 1 "within FOIA's 20-day statutory time period." Exhibit Q, p. 1.

72. It also withheld making a decision with respect to a fee waiver until "the conclusion of the search and assessment of responsive records, should they exist." Exhibit Q, p. 1.

73. To date, POGO has received no documents responsive to Request A.[2]

74. More than six months have passed since DoD acknowledged POGO's request and therefore, POGO has "exhausted [all its] administrative remedies with respect to" Request A as DoD has failed "to comply with the applicable time limit provisions." 5 U.S.C. § 552(a)(6)(C)(i).

75. Plaintiff POGO has a statutory right to the requested records, and there is no legal basis for DOD's failure to disclose them.

## ii.  Request B

76. On April 21, 2020, POGO employee Jason Paladino submitted a FOIA request to DoD via the OSD/JS Public Access Link FOIA Request Form which requested:

> 1. Records sufficient to show the number of military and DoD Appropriated Fund (APF) civilian personnel permanently assigned to:
>    a.  Afghanistan,
>    b.  Iraq, and

---

[2]     FOIA allows the Agency 20 business days to respond to POGO's request. DOD has not requested any additional time to respond.

      c.  Syria

for the period December 2017 to the most recent available quarter, disaggregated by country and broken down quarterly. DMDC currently releases these figures for other countries in quarterly manpower reports titled "Number of Military and DoD Appropriated Fund (APF) Civilian Personnel Permanently Assigned By Duty Location and Service/Component" (DRS #103763).

2. Records sufficient to show the number of U.S. Armed Forces personnel on temporary duty or deployed in support of contingency operations (i.e. personnel in-country for short-duration missions, personnel in a temporary duty status, personnel assigned to combat support agencies or deployed in support of contingency operations, and forces assigned to the material recovery element of the Resolute Support Sustainment Brigade) in reported totals in the following countries: ):
   a. Afghanistan,
   b. Iraq, and
   c. Syria
3. Records sufficient to show the Force Management Level (FML) for:
   a. Afghanistan,
   b. Iraq, and
   c. Syria

for the period August 2017 to the most recent available quarter, disaggregated by and broken down quarterly.

*See* April 21, 2020 FOIA request ("Request B"), attached hereto as Exhibit R.

77. POGO requested a fee waiver pursuant to 5 U.S.C. § 522(a)(4)(A)(iii) and 32 CFR § 286.12(l) if the fees amount to more than $100. *Id.*, p. 2.

78. POGO also requested expedited processing pursuant to 32 C.F.R. § 286.8 (e)(1)(i)(B). *Id.*, p. 5.

79. POGO received an acknowledgment letter/interim response dated April 22, 2020 for Request B and it was assigned the tracking number 20-F-0995. *See* Exhibit Q; *see also* Request B Acknowledgment Letter, attached hereto as Exhibit S.

80. In the letter, DoD denied POGO's request for expedited processing and informed POGO that it would not respond to Request 1 "within FOIA's 20-day statutory time period." Exhibit S, p. 1.

Complaint
Page 13

81. It also withheld making a decision with respect to a fee waiver until "the conclusion of the search and assessment of responsive records, should they exist." *Id.*

82. To date, POGO has received no documents responsive to the Request.

83. More than six months have passed since DoD acknowledged POGO's request and therefore, POGO has "exhausted [all its] administrative remedies with respect to" Request B as DoD has failed "to comply with the applicable time limit provisions." 5 U.S.C. § 552(a)(6)(C)(i).

84. Plaintiff POGO has a statutory right to the requested records, and there is no legal basis for DOD's failure to disclose them.

## VII.   CAUSES OF ACTION

### COUNT 1
### Violation of the FOIA for Failure to make Promptly
### Available the Records Sought by Plaintiff's Requests

85. Paragraphs 1-81 are realleged and reincorporated herein by reference.

86. Defendant's failure to make promptly available the records sought by plaintiff's requests violates the FOIA, 5 U.S.C. § 522(a)(3)(A).

### COUNT 2
### Violation of the FOIA for Failure to Timely Respond to Plaintiff's Requests

87. Paragraphs 1-83 are realleged and reincorporated herein by reference.

88. Defendant's failure timely to respond to plaintiffs' request violates the FOIA, 5 U.S.C. § 552(a)(6)(A)(i), and DOJ's own regulation promulgated thereunder, 28 C.F.R. § 16.6(b).

## VIII.   PRAYER FOR RELIEF

**WHEREFORE,** plaintiff, POGO, prays for the following relief:

    a.  As to Count 1:
        i.  Order defendant to immediately state which records it intends to disclose in response to plaintiff's FOIA requests;

    ii.  Order defendant to provide a schedule of production to plaintiff;

   iii.  Order defendant to disclose all responsive, non-exempt records by a date certain without further delay;

   iv.  Order defendant to disclose a log identifying any document or parts thereof that it withholds and the basis for the withholding;

    v.  Award plaintiff its costs and reasonable attorney's fees incurred in this action; and

   vi.  Grant such other relief as the Court may deem just and proper.

  b.  As to Count 2:

    i.  Order defendant to immediately state which records it intends to disclose in response to plaintiff's FOIA requests;

    ii.  Order defendant to provide a schedule of production to plaintiff;

   iii.  Order defendant to disclose all responsive, non-exempt records by a date certain without further delay;

   iv.  Order defendant to disclose a log identifying any document or parts thereof that it withholds and the basis for the withholding;

    v.  Award plaintiff its costs and reasonable attorney's fees incurred in this action; and

   vi.  Grant such other relief as the Court may deem just and proper.

Respectfully submitted this 31st day of October, 2020.

By:    __/s/Ross A. Nabatoff_____

Ross A. Nabatoff, DC Bar # 376665
LAW OFFICE OF ROSS A. NABATOFF
1440 G Street, N.W.
Washington, D.C.  20005
(202) 650-0037
*Attorney for Plaintiff*

Complaint
Page 15